Ormand N. Gale, J.
The defendant has brought a motion for an order directing a full evidentiary hearing concerning wiretaps and eavesdrop warrants, and requesting disclosure to him of all logs, records and memoranda of electronic surveillance made pursuant to the eavesdropping warrants on Syracuse telephone Nos. 463-8254, 468-4360 and 471-4793.
He further requests the following:
1. An order to furnish certified copies of the applications made by the People which form the basis for the issuance of the (wiretap) orders;
2. All order directing a pretrial hearing, conducted to determine whether the electronic surveillance tainted the evidence upon which the instant indictment is based;
3. Dismissal of the indictment in the event the hearing disclosed that the indictment was the product of illegally obtained evidence;
4. An order permitting inspection and examination by the defendant of all conversations intercepted pursuant to wiretapping orders on the above phones;
5. An order suppressing the use as evidence of the conversations as well as any leads obtained as a result of the execution of the wiretap orders, on grounds that there was inadequate probable cause for issuance of such orders.
In addition, a supplemental motion was made to include inspection of all logs, records and memoranda of electronic surveillance on telephone No. 457-3918. All three defendants named above joined in the motion to suppress.
The history behind the disputed electronic surveillance goes back to what has been called the ‘1 parent ’ ’ tap, which originally furnished evidence that illicit gambling activity was taking place. This original tap was on the telephone of one named Mariotti, and was alleged to be used by Paul Maglione, at 106 Avery Avenue in North Syracuse, for purposes of gambling activities. Subsequently, as a result of the parent tap, surveillance was established on the telephone of Stephen Bennett, at the Regional Market. After installation of this latter tap, numerous outgoing telephone calls were made to 468-4360. During these calls, Stephen Bennett, speaking from telephone No. 471-4793, identified himself by code and asked for the ‘ ‘ line ” or “ point spreads ” on regularly scheduled collegiate and professional football games. On receiving this information, he thereupon “ laid off ’ ’ specific wagers to the party at telephone No. 468-4360. The investigating officer stated in his affidavit that he had known Ambrose Mezzatesta for years, and had spoken with him in *917 person and heard his voice on the telephone on many different occasions. He identified the voice which accepted the lay-offs as Mezzatesta.
Records of the New York Telephone Company revealed that the number being thus used, 468-4360, was listed in the name of Beverly Killingbeck, and was located in a first floor flat at 806 Avery Avenue, Syracuse, New York. The investigation further revealed that Beverly Killingbeck was a girl friend of Mezzatesta. Additionally, a telephone call was placed to the number by a female employee of the State Police, and the party answering was engaged in conversation, and identified by the investigator who knew his voice as being that of Ambrose Mezzatesta.
These facts were set forth in the application for the wiretap warrant, and in the affidavit supporting the application.
Thereafter evidence was secured, under this “ grandchild ” of the original or parent tap, which led to the indictment of the above-named defendants charged with nine counts of promoting gambling in the first degree; four counts of promoting gambling in the second degree; and one count each of conspiracy in the third degree and conspiracy in the fourth degree. The validity of the warrant is challenged in this motion, based on the alleged inadequacy of the underlying affidavits to establish probable cause.
The defendants further aver in a supplemental affidavit that, upon information and belief, the informant behind the interception orders on telephone No. 457-3918, the parent tap, was ‘ ‘ a convicted burglar having been released from the Ohio parole system in March 1969 ’ ’. The District Attorney has denied that the information relating to the affidavits upon which the original tap was based, was derived from the informant named in the defendants’ supplemental affidavit. In support of this position, it appears that the warrants were issued in the latter part of 1968 and prior to the release of the alleged informant. In any event, the convictions, of an informant do not necessarily affect the validity of his information.
Moreover, the warrant originally issued by a Supreme Court Justice in October of 1968 to intercept conversations on the telephone alleged to have been used by Paul Maglione, has already been examined by this court and found to be valid. (People v. Maglione, Index No. 69/69, Onondaga County Ct. [Orenstein, J.], April 2, 1970.) There is no requirement that the validity of the “ parent ” tap be relitigated at this time.
It was further held in People v. Bennett (Index No. 69/75, Onondaga County Ct. [Orenstein, J.], April 28, 1970) that the *918 surveillance on telephone No. 471-4793, alleged to be used by Bennett for carrying on unlawful gambling activities, was valid. This warrant, as stated before, was based on conversations'carried on between the originally-tapped Mariotti telephone and the Bennett telephone.
The supporting affidavits, the applications, and the warrants permitting technical surveillance on the telephones used by the defendants Mezzatesta and La Penta have been examined as to their validity. The constitutional requirements outlined in Berger and Katz (Berger v. New York, 388 U. S. 41; Katz v. United States, 389 U. S. 347) of particularity, judicial restraint and supervision, and protective procedures., all seem to this court to have been met.
The orders under consideration do comply with the statutory provisions by particularly describing the type of communications .sought to he intercepted: i.e., conversations relating to gambling activity. Both Mezzatesta and La Penta are named in warrants; Cerio is- named in the affidavit and application supporting the warrant underlying the La Penta surveillance.
The particular offense to which it relates is. cited in the warrant: “ violations of Articles 105 and 225 of the Penal Law of the State of New York.”
The presumption of regularity accorded official proceedings must be held to be- conclusive with respect to judicial discretion in granting the warrants. The Justices of the Supreme Court who signed the warrants had before them the applications of the District Attorney and the affidavits supporting them. No evidence has been presented which would suffice to controvert the Judges’ granting the warrants.
The defendants have cited People v. Gnozzo (64 Misc 2d 599) as being directly on point with their own contentions. There, a defendant who was not identified or in any way described in an eavesdropping warrant successfully maintained a motion to dismiss a search warrant based on the seizure of his conversations with another whose telephone was tapped. The decision there was based on the determination of the question of standing.
In the instant case, the seizure of the defendants’ conversations with one whose telephone was tapped was the basis, along with other facts constituting probable cause, for a warrant to seize their specific conversations as they related to violations of articles 105 and 225 of the Penal Law.
Section 819 of the Code of Criminal Procedure (in effect at the time the warrants were issued) provided, at subdivision 2: ‘1 An eavesdropping warrant must contain * * * 2. The *919 identity of the person, if known, whose communications are to be intercepted ” (italics supplied).
Subdivision 4 of section 825 provided: ‘‘ When a law enforcement officer, while engaged in intercepting communications in the manner authorized by this title, intercepts a communication which was not otherwise sought and which constitutes evidence of any crime that has been, is being or is about to be committed, the contents of such communications * * * and evidence derived therefrom, may be disclosed or used as provided in subdivisions one and two of this section. Such contents and any evidence derived therefrom may be used under subdivision three of this section when a justice amends the eavesdropping warrant to include such contents.” (Italics supplied.)
The new Criminal Procedure Law re-enacts these provisions in the same language at section 700.30 and subdivision 4 of section 700.65.
Where the warrant already includes the authority to ‘ ‘ seize ’ ’ evidence leading to the detection and apprehension of persons engaged in violations of articles 105 and 225 of the Penal Law of the State of New York and the persons are named in the application for the warrant and in the affidavit supporting it, we think the requirement that the selfsame evidence be added to the eavesdropping warrant by amendment is entirely redundant. This is especially true where the law enforcement agency does not amend, but seeks a new warrant specifically naming the defendants and describing the conversations sought. We do not think that the Second Department’s decision in People v. D’Amico (37 A D 2d 730) holds otherwise.
The language of the Fourth Amendment is explicit as to the restrictions to be put upon warrants. Among other requirements, they must only be issued ‘ ‘ upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
We think these conditions have been met.
The further request, in the supplemental notice of motion, for an order declaring the 1968 law (Code Crim. Pro., § 814 et seq.), providing for eavesdropping warrants, as unconstitutional on its face, is moot. The constitutionality of that statute, as it applies to the instant warrants, was upheld by this court in a previous decision (People v. Artessa, Index No. 69/78, Onondaga County Ct. [Orenstein, J.], April 27,1970) and need not be relitigated.
People v. Feinlowitz (29 N Y 2d 176, 185) says: “ The crucial fact is that Congress has clearly indicated a policy to allow courtroom use of judicially supervised and controlled wiretaps. ’ ’
*920 People v. Feinlowitz (supra, p. 186) states: “Thus, there seems to be no valid reason to exclude such evidence especially since the police acted in full compliance with both constitutional law and the statutory law of our State as it existed at that time.”
Although the warrants under consideration were issued in 1968, the case of Berger v. New York (388 U. S. 41, supra) had already been decided by the United States Supreme Court and the guidelines had been established therein. The District Attorney conformed his warrants, not to the 1967 law which was declared unconstitutional by Berger, but to the directive of Berger. These provisions were re-enacted virtually unchanged by the new Criminal Procedure Law which went into effect September 1, 1971.
For the above reasons, the motion is denied in its entirety, except for those applications and affidavits already furnished the defendants' by the District Attorney.